UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL RANGEL,<br><br>        Plaintiff,<br><br>   v.<br><br>CHEN, et al.,<br><br>        Defendant. | 1:15-cv-01349-DAD-MJS (PC)<br><br>**ORDER GRANTING PLAINTIFF'S MOTION FOR EXTENSION OF TIME; AND**<br><br>**FINDINGS AND RECOMMENDATIONS TO GRANT DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**<br><br>**(ECF Nos. 25, 34)**<br><br>**FOURTEEN (14) DAY DEADLINE** |

Plaintiff is a state prisoner proceeding pro se and in forma pauperis in this civil rights action brought pursuant to 28 U.S.C. § 1983. This matter proceeds on Plaintiff's original complaint against Defendant Nurse A. Manasrah on an Eighth Amendment medical indifference claim. Pending now is Defendant's February 7, 2017, motion for summary judgment. This motion is fully briefed and ready for disposition.

**I.    Plaintiff's Allegations**

In the complaint, Plaintiff alleges that he experienced chest pain and difficulty breathing on November 12, 2013. At the prison clinic, Nurse Manasrah examined Plaintiff and said, "There is nothing wrong with you and if I don't find something wrong with you, I will write you up." Defendant failed to check Plaintiff for Valley Fever and

1

ignored Plaintiff's complaints. Plaintiff was then returned to his cell where, over the course of the next few days, his condition worsened. On November 25, 2013, Plaintiff was diagnosed with Valley Fever.

## II.     Legal Standards for Summary Judgment

Any party may move for summary judgment, and "[t]he [C]ourt shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Each party's position, whether it be that a fact is disputed or undisputed, must be supported by (1) citing to particular parts of materials in the record, including but not limited to depositions, documents, declarations, or discovery; or (2) "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

The party seeking summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (internal quotation marks omitted). If the movant will have the burden of proof at trial, it must demonstrate, with affirmative evidence, that "no reasonable trier of fact could find other than for the moving party." Id. at 984. In contrast, if the nonmoving party will have the burden of proof at trial, "the movant can prevail merely by pointing out that there is an absence of evidence to support the nonmoving party's case." Id. (citing Celotex, 477 U.S. at 323). Once the moving party has met its burden, the nonmoving party must point to "specific facts showing that there is a genuine issue for trial." Id. (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986)).

In ruling on a motion for summary judgment, a court does not make credibility determinations or weigh evidence. See Liberty Lobby, 477 U.S. at 255. Rather, "[t]he

2

evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Id. Only admissible evidence may be considered in deciding a motion for summary judgment. Fed. R. Civ. P. 56(c)(2). "Conclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment." Soremekun v. Thrifty Payless, Inc., 509 F.3d 978, 984 (9th Cir. 2007).

### III. Facts[1]

At all relevant times, Plaintiff was a state inmate housed at Kern Valley State Prison ("KVSP") in Delano, California. Compl. at 7. Nurse Manasrah is a Family Nurse Practitioner-Certified employed at KVSP. Decl. of A. Manasrah in Supp. Def.'s Mot. Summ. J. (ECF No. 25-3) ¶¶ 1-2.

On November 12, 2013, Plaintiff was referred to the Triage and Treatment Area ("TTA") at KVSP with complaints of a rash, breathing problems, and tightness in his chest. Pl.'s Opp'n (ECF No. 35 at 28). When Plaintiff arrived at the TTA, he was taken into an examining room by two nurses, one male and one female ("the TTA nurses"). Pl.'s Dep. at 60:14-22.

Plaintiff alleged in his Complaint and in his deposition that he had personal contact and direct communication with Nurse Manasrah. He claimed that Defendant was one of the two nurses at the TTA whose face-to-face interaction with Plaintiff, which included hostility and refusal to treat Plaintiff, underlies this action. Pl.'s Dep. at 29:1-6; 32:20-25; 35:18-24. See also Compl. ¶¶ 9-12 (Plaintiff was "seen" by Nurse Manasrah, he "explained" to Defendant that he was having chest pains and flu-like symptoms, Defendant "responded" with "there is nothing wrong with you…," Defendant then "stated" that Plaintiff is suffering only from acid reflux, and finally, Defendant did not "check" for Valley Fever).

However, in his opposition to Defendant's summary judgment motion, Plaintiff submits no evidence that Nurse Manasrah personally saw Plaintiff or was one of the two

---
[1] All facts are undisputed unless noted otherwise.

3

TTA nurses whose conduct serves as the basis of this action. Instead, Plaintiff admits that he "did not personally encounter defendant in a common traditional sense, (I.E face to face meeting)...." Pl.'s Opp'n at 3. Plaintiff now seems to be claiming only that Defendant Manasrah's *recommendations* to the two TTA nurses violated Plaintiff's constitutional rights. See id.

Thus, the now-unrefuted evidence is that Defendant was not present at the time of Plaintiff's November 12, 2013, TTA visit, and he did not personally see or examine Plaintiff. Per the medical records of this encounter, Nurse Manasrah was the on-call health care provider on duty at the time. Manasrah Decl. ¶ 2, Ex. A. As an on-call nurse, Defendant had no interactions with Plaintiff; he did not personally observe him or speak to him. Manasrah Decl. ¶ 5. On that day, Defendant was contacted by telephone by the TTA nurses, Nurse Gant and Nurse Regino ("the TTA nurses"). Id. ¶ 2, Ex. A. Plaintiff has no recollection of a telephone call made by either of the TTA nurses. Pl.'s Dep. at 67:17-23; 69:11-19.

The TTA nurses informed Defendant that Plaintiff had chest pain in the middle of his chest with no radiation to the extremities, no weakness or dizziness, no abdominal or back pain, no neurovascular abnormalities, and a rash on his arms and legs with no lesions. Manasrah Decl. ¶ 3, Ex. A. The TTA nurses also stated that Plaintiff was not experiencing shortness of breath and that he was more concerned about the rash than his chest pain. Id. They informed Defendant that Plaintiff's vital signs included blood pressure of 145/93, pulse rate of 88, respiration rate of 18, temperature of 97.9 degrees, and oxygen saturation rate of 100%. Id. Plaintiff was described as alert and oriented, ambulatory, and did not appear to be sick. Id. Finally, Defendant was told that Plaintiff's lungs were clear to auscultation bilaterally and that an electrocardiograph demonstrated that Plaintiff's heart was beating in a normal sinus rhythm. Id. There is no notation in the November 12, 2013, medical notes that Plaintiff complained of Valley Fever, and Defendant was not informed that Plaintiff was experiencing flu-like symptoms or might have Valley Fever. Manasrah Decl. ¶ 5, Ex. A.

Based on the information provided, Defendant determined that Plaintiff had non-cardiac chest pain, likely caused by gastroesophageal reflux disease (gerd), and atopic dermatitis. Manasrah Decl. ¶ 4. Defendant recommended that Plaintiff receive a gastrointestinal ("GI") cocktail and Zantac medication to address the gerd, and hydrocortisone cream to address the rash. Id. Following the GI cocktail, the medical notes reveal that Plaintiff's chest pain went away "completely" that same day. Pl.'s Opp'n (ECF No. 35 at 27). Plaintiff was then discharged to his housing unit. Manasrah Decl. Ex. A. Defendant referred Plaintiff to the Registered Nurse line at KVSP for a follow-up examination the next day and to the doctor in 2-3 days. Id. Defendant did not state to anyone that Plaintiff would be treated only for chest pain. Manasrah Decl. ¶ 5.

Nurse Manasrah has received training concerning a number of medical conditions, including Valley Fever, pulmonary embolism, and liver failure. Manasrah Decl. ¶¶ 6, 8, 10. He has also participated in the treatment of patients with these conditions. Id. None of the information conveyed to Defendant suggested to him that Plaintiff was experiencing Valley Fever, liver failure, or a pulmonary embolism. Manasrah Decl. ¶¶ 7, 9, 11. As to Valley Fever, the information that Defendant received—that Plaintiff was no longer experiencing shortness of breath, that his lungs were clear bilaterally, and that his body temperature was in a normal range—was inconsistent with a diagnosis of Valley Fever. Id. ¶ 7. As to liver failure, the information that Defendant received—that Plaintiff was not experiencing weakness, had no abdominal pain, and did not appear to be sick—was inconsistent with a diagnosis of liver failure. Id. ¶ 10. Finally, as to pulmonary embolism, the information that Defendant received—that Plaintiff was not experiencing shortness of breath, and that his lungs were clear bilaterally—was inconsistent with a diagnosis of pulmonary embolism. Id. ¶ 9.

The next day, on November 13, 2013, Plaintiff was seen at the TTA by Registered Nurse Ramos. Manasrah Decl. Ex. D. Nurse Ramos noted Plaintiff's temperature to be 97.8 degrees. Id. Plaintiff was treated for the rashes and reported to be feeling better. Id. There are no reports that Plaintiff complained of Valley Fever or any other symptoms

associated with it during this follow-up appointment, see id., and Plaintiff has no recollection of complaining about Valley Fever or related symptoms such as chest pain, shortness of breath, chills, flu-like symptoms, or weakness, Pl.'s Dep. at 75:4—76:13.

On November 14, 2013, Plaintiff was seen at the TTA for a follow-up examination by Dr. C. Chen. Manasrah Decl. Ex. E. Dr. Chen noted that Plaintiff's rash was getting better. Id. Plaintiff does not remember if he told either Dr. Chen or the nurse who was present that he might have Valley Fever. Pl.'s Dep. at 82:6-8.

On November 17, 2013, Plaintiff submitted a Health Care Services Request Form, which did not refer to Valley Fever or flu-like symptoms. See Manasrah Decl. Ex. E.

Plaintiff was seen on November 18, 2013, where he complained about his rash, feeling weak, nauseous, and having headaches. Pl.'s Opp'n (ECF No. 35 at 35). Plaintiff was ultimately diagnosed with Valley Fever at San Joaquin Community Hospital on November 25, 2013. Manasrah Decl. Exs. G-H.

**IV.     Discussion**

**A.     Eighth Amendment Medical Indifference**

The treatment a prisoner receives in prison and the conditions under which the prisoner is confined are subject to scrutiny under the Eighth Amendment, which prohibits cruel and unusual punishment. See Helling v. McKinney, 509 U.S. 25, 31 (1993); Farmer v. Brennan, 511 U.S. 825, 832 (1994). The Eighth Amendment "... embodies broad and idealistic concepts of dignity, civilized standards, humanity, and decency." Estelle v. Gamble, 429 U.S. 97, 102 (1976).

A prison official violates the Eighth Amendment only when two requirements are met: (1) objectively, the official's act or omission must be so serious such that it results in the denial of the minimal civilized measure of life's necessities; and (2) subjectively, the prison official must have acted unnecessarily and wantonly for the purpose of inflicting harm. See Farmer, 511 U.S. at 834. Thus, to violate the Eighth Amendment, a prison official must have a "sufficiently culpable mind." See id.

A claim of medical indifference requires: 1) a serious medical need, and 2) a

deliberately indifferent response by defendant. Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006). A serious medical need may be shown by demonstrating that "failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.'" Id.; see also McGuckin v. Smith, 974 F.2d 1050, 1059-60 (9th Cir. 1992) ("The existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain are examples of indications that a prisoner has a 'serious' need for medical treatment.").

The deliberate indifference standard is met by showing: a) a purposeful act or failure to respond to a prisoner's pain or possible medical need, and b) harm caused by the indifference. Id. "Deliberate indifference is a high legal standard." Toguchi v. Chung, 391 F.3d 1051, 1060 (9th Cir. 2004). "Under this standard, the prison official must not only 'be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists,' but that person 'must also draw the inference.'" Id. at 1057 (quoting Farmer, 511 U.S. at 837). "'If a prison official should have been aware of the risk, but was not, then the official has not violated the Eighth Amendment, no matter how severe the risk.'" Id. (brackets omitted) (quoting Gibson v, Cnty. of Washoe, 290 F.3d 1175, 1188 (9th Cir. 2002)). "[A]n inadvertent failure to provide adequate medical care" does not, by itself, state a deliberate indifference claim for § 1983 purposes. McGuckin, 974 F.2d at 1060 (internal quotation marks omitted); See also Estelle, 429 U.S. at 106 ("[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner."). "A defendant must purposefully ignore or fail to respond to a prisoner's pain or possible medical need in order for deliberate indifference to be established." McGuckin, 974 F.2d at 1060.

**B. Analysis**

Defendant Manasrah seeks summary judgment on Plaintiff's Eighth Amendment medical care claim on the ground that he was not one of the two TTA nurses whom Plaintiff accuses of hostility and refusing to treat his medical condition. Defendant has produced credible and unrefuted evidence that he was an on-call nurse who was telephoned by the two TTA nurses, but did not have a face-to-face interaction with Plaintiff and he did not speak to or examine Plaintiff.

Even if the undersigned construed Plaintiff's new claim (that Defendant Manasrah's violated Plaintiff's constitutional rights by reaching erroneous conclusions and making erroneous recommendations to the two TTA nurses) as a motion for leave to amend his pleading and granted it[2], summary judgment would still be warranted: Plaintiff has presented no evidence that the information conveyed to Defendant included symptoms that a reasonable medical professional would construe as Valley Fever symptoms, and/or that Defendant's interpretation of the symptoms that were conveyed to him amounted to a purposeful failure to respond to Plaintiff's medical needs. While Plaintiff contends that he exhibited "classic symptoms" of Valley Fever, including chest pain and rash, he does not refute that his temperature was normal and that his chest pain went away "completely" after the GI cocktail, facts that Nurse Manasrah relied on in ruling out Valley Fever. Furthermore, there is no medical testimony suggesting that Nurse Manasrah's interpretation of Plaintiff's symptoms or the treatment he recommended were medically unacceptable. Stated simply, there is nothing in the record that would support a claim that Defendant disregarded a risk of harm to Plaintiff of which he was aware.

Because Plaintiff has not produced any evidence that raises a triable issue of

---

[2] Even if construed as such, the undersigned finds that leave to amend would be improper. "The timing of the motion, after the parties had conducted discovery and a pending summary judgment motion had been fully briefed, weighs heavily against allowing leave. A motion for leave to amend is not a vehicle to circumvent summary judgment." Schlacter-Jones v. General Telephone, 936 F.2d 435, 443 (9th Cir. 1991), abrogated on other grounds by Cramer v. Consolidated Freightways, Inc., 255 F.3d 683 (9th Cir. 2001).

8

material fact as to Nurse Manasrah's involvement in the alleged violation of his Eighth Amendment right to medical care, Defendant is entitled to judgment as a matter of law. In light of this recommendation, the Court declines to reach Defendant's argument that he is entitled to qualified immunity.

**V.  Conclusion**

For the foregoing reasons, IT IS HEREBY ORDERED that Plaintiff's June 7, 2017, motion for extension of time (ECF No. 24) is GRANTED, and Plaintiff's opposition is deemed timely filed; and

IT IS HEREBY RECOMMENDED that Defendant's motion for summary judgment (ECF No. 5) be GRANTED.

These Findings and Recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1). Within fourteen (14) days after being served with these Findings and Recommendations, any party may file written objections with the Court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within fourteen (14) days after service of the objections. The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:  June 26, 2017      /s/ *Michael J. Seng*
                                          UNITED STATES MAGISTRATE JUDGE